## J. R. Boyd *v.* W. F. Hawkins.

1. Guardian and Ward. *Expenses of ward limited to income. Statute construed.*

　　The statute (sect. 2103, Code 1880, sect. 1216, Code 1870) limiting the expenditures of a guardian for his ward to the income of the ward's estate, except when authorized by an order of court to exceed it, is peremptory, and if a guardian, not being authorized by a precedent order of court, exceed such income he is not entitled, in a settlement with his ward, to an allowance for the excess expended on the ground that it was for necessaries for the ward.

2. Same. *Guardian using ward's money. Extent of liability for interest.*

　　The liability of a guardian who mingles his ward's money with his own, and uses it, to pay ten per cent interest thereon, as provided in sect. 2105 of the Code of 1880, does not cease upon the termination of the guardianship by the expiration or removal of the ward's legal disabilities, but continues so long thereafter as the guardian may withhold payment of the amount due the ward.

Appeal from the Chancery Court of Choctaw County.

Hon. R. W. Williamson, Chancellor.

In 1868 J. R. Boyd was appointed guardian of the person and estate of W. F. Hawkins, a minor, about seven years old. In 1876 the minor ran away from the custody of his guardian, who then presented to the court a final account of his guardianship and asked to be discharged from his trust as guardian. The ward was cited, appeared in court, and made no objection to the final account; and in 1877 a decree was rendered closing the account and discharging the guardian. Sometime thereafter, Hawkins obtained a decree of the chancery court relieving him of the legal disabilities of minority, and in 1880

he filed the petition in this case for the purpose of having Boyd's final settlement of the guardianship reviewed and the decree discharging him vacated. The petition alleged that the guardian, without an order of court therefor, had exceeded the income of the petitioner's estate in the expenditures for which he had been credited in his final settlement, and that he was chargeable with interest at the rate of ten per cent per annum instead of six per cent, as he was charged in his final account. These allegations were denied by the answer of the defendant. Secondary evidence was adduced by both parties as to whether any order authorizing the guardian to exceed the income of the ward's estate had ever existed, the court records having been destroyed by fire. There was no controversy as to the fact that the guardian's expenditures exceeded the ward's income, but only as to the existence of the order authorizing the same. The defendant claimed, too, that all the articles. bought with the ward's money were necessaries for him. The chancellor found at the hearing, that no such order had existed, and that the guardian had mingled the ward's money with his own and used it; and a decree was rendered vacating the former decree and charging the guardian with the amount expended in excess of the ward's income, and requiring him to pay ten per cent interest per annum on the ward's money which had come into his hands and been mingled with his own and used by him. From this decree Boyd appealed.

*L. Brame*, for the appellant.

1. The ward had a guardian *ad litem*, and the decree approving the final account was binding until regularly reversed or reviewed. *Cocks* v. *Simmons*, 57 Miss. 183; *Stahler* v. *Cook*, 57 Ala. 22. This decree being duly and legally rendered, necessarily adjudicated that an order had been entered allowing the guardian to exceed the income, and when the bill was filed several years afterwards to set aside the decree, the complainant could not succeed by showing that probably no such order was ever made, but it had to be shown conclusively.

The case seems to have been disposed of upon the assumption that it was a mere matter of preponderance of evidence as to whether or not the order ever existed; it must have been overlooked that the complainant had not only to overturn the sworn denials of the defendant's answer, but a solemn decree of the court, before he could recover.

2. This is a suit against the guardian individually, not on his bond. He furnished the infant with necessaries and should be allowed to offset the claim of the ward by the amount thus furnished. If he had not been guardian he could have sued the infant to recover for the amount advanced. *Roseborough* v. *Roseborough*, 59 Tenn. 314; Schouler's Dom. Rel. 457. Income may be exceeded under special circumstances. *Frelick* v. *Turner*, 26 Miss. 394; *Welch* v. *Burris*, 29 Iowa, 186. See, especially, *Jarrett* v. *Andrews*, 7 Bush, 311. By limiting such an allowance to an amount actually advanced by the guardian for necessaries, no possible harm can come to the ward.

3. If it was proper to charge the defendant with interest, and at the rate of ten per cent, while he was guardian, it was certainly improper to do so after the removal of the ward's disabilities of minority. This occurred before the bill in this case was filed, which was in 1880. At that time the relation of guardian and ward between the parties ceased to exist. Code 1871, sect. 1218. And, if the defendant was indebted it was only as an ordinary trustee, liable for a six per cent interest. *Garland* v. *Norman*, 50 Miss. 238; *Fitz-Gerald* v. *Bailey*, 58 Miss. 658; 59 Tenn. 260. If the defendant succeeds no further than to reduce the interest charged against him from ten to six per cent, after the removal of complainant's disabilities of minority in 1880, the difference in the amount due will be considerable.

*J. B. H. Hemingway*, for the appellee.

1. The whole evidence in the case taken together, puts it beyond doubt that there never was any order of court author-

izing the guardian to exceed the income of the ward's estate. But if there were no evidence to disprove the existence of such order, the evidence adduced to establish it would not be sufficient for that purpose. The guardian himself will not say positively that there ever was such an order, but only presumes that there was. It cannot be inferred from the decree allowing the guardian's final settlement and discharging him that such order was shown to the chancellor when he granted the decree on final settlement; for the same chancellor, as the record shows, who granted that decree rendered the decree in this case, setting aside the former and requiring a new account of the guardian. It must be presumed, either that the chancellor's attention was not called to the absence of the order allowing the guardian to exceed the income, when his final account was approved, or that the chancellor then accepted proof of such order, which has been, by the evidence in this case, entirely overthrown and which has convinced him that no such order ever existed. The chancellor's finding on this point is impregnable.

2. The bill of exceptions shows that the guardian intermingled the ward's money with his own funds, and he was properly charged ten per cent interest on the amount due his ward. Sect. 2105, Code 1880. But independent of this statute, it was proper for the court to charge the guardian with the highest rate of interest known to the law. *Powell* v. *Cooper*, 42 Miss. 226. In the circumstances of this case the court might have charged the appellant with compound interest. *Troup* v. *Rice*, 55 Miss. 278. Simple interest at ten per cent, or compound interest at six per cent, are the highest legal rates of interest adopted in cases like this, and the court should adopt the one or the other which will produce the greater income to the ward's estate.

I think there is no force in the point made for the appellant that the guardian should have been charged with interest after the ward's disabilities were removed. The cases of *Bailey* v.

*Fitz-Gerald*, 85 Miss. 658 and *Garland* v. *Norman*, 50 Miss. 238, do not sustain such a proposition. If the guardian had desired to avoid liability for interest he should have paid the ward what he owed him.

Chalmers, J., delivered the opinion of the court.

We must accept the finding of the chancellor as conclusive on the question of the existence or non-existence of an order allowing the guardian to exceed the income of the ward. We cannot sanction the idea, that even though the guardian had no such order, his expenditures for necessaries for the ward will be allowed him, because if those necessaries had been furnished by a stranger the price of them could have been recovered by a suit against the minor. The case of *Jarrett* v. *Andrews*, 7 Bush, 311, seems to so hold, but it strikes us as one of those hard cases which make bad precedents. The statute of this State is peremptory that the income shall not be exceeded save by authority of an order of the court, and this has been always construed to mean a precedent order. The construction contended for by counsel for appellant would result in an abolition of the statute, since in every case the guardian would cover so much of his expenditures as were not for necessaries with the ward's income, and refer the necessaries to this general power of furnishing them as a stranger.

We reject the view that the penalty of paying ten per cent interest denounced by sect. 2105 of the Code of 1880, upon the guardian who mingles his ward's money with his own and uses it, ceases with the trust relation — it ceases only with payment. The rate of interest having once attached under the statute continues until discharged by payment.

Affirmed.